IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES M. CORR, | ) |
| | ) |
| Plaintiff, | ) 2:15-cv-00637 |
| | ) |
| v. | ) Judge Mark R. Hornak |
| | ) |
| SPRINGDALE BOROUGH, ET AL., | ) |
| | ) |
| Defendants. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Plaintiff James M. Corr alleges claims against Springdale Borough, Julio Medeiros III, Kenneth Lloyd, Jason Frye, and Paul Perriello for violation of his Fourteenth Amendment right to procedural due process (Count I), violation of his First Amendment rights (Count II), and violation of his Fourth Amendment rights (Count III). Pending before the Court is Defendants' Motion for Summary Judgment on all Counts, ECF No. 41. For the reasons that follow, Defendants' Motion for Summary Judgment is granted as to Counts I and III. Defendants' Motion for Summary Judgment is granted as to Count II regarding Defendants Springdale Borough and Medeiros and denied as to Count II regarding Defendants Frye and Perriello.

### I.    BACKGROUND

Plaintiff is a police officer who worked part-time for Springdale Borough until May 2014. ECF No.44-2 at 16:23-17:1, ECF No. 44-5 at 2. In 2013, the new Chief of Police, Medeiros, and the new mayor, Lloyd, began supervising Plaintiff's work. *Id.* In the spring of 2014, Plaintiff's girlfriend contacted Medeiros and accused Plaintiff of stealing prescription pills from her. ECF No. 44-2 at 47:7-47:23. Medeiros then called Plaintiff on May 15, 2014 and informed him that he had to submit to a urinalysis the next day. *Id.* at 51:16-53:11. However, due

to a variety of circumstances, Plaintiff did not get drug tested on May 16. 2014. *Id.* at 59:5-76:19. According to Plaintiff's testimony, following Plaintiff's failure to complete the urinalysis, Medeiros and Lloyd fired him, and then backtracked by threatening to bring criminal charges against him if he did not resign. *Id.* at 71:10-72:5, 79:2-79:12. Through his union, Teamsters Local Union No. 205, Plaintiff filed a grievance against Springdale Borough on May 19, 2014. ECF No. 44-4. The allegations set forth in Plaintiff's grievance were denied by Lloyd on May 21, 2014. *Id.* Thereafter, Plaintiff decided to resign and signed a letter to that effect on May 27, 2014. ECF No. 44-5 at 2. Plaintiff and his Union pursued the grievance no further, and in fact, Plaintiff's union appears to have supported Plaintiff's written resignation. ECF No. 44-2 at 83:24-84:4, 87:2-87:17.

Plaintiff's resignation, however, did not end his involvement with Springdale Borough. In the first half of 2015, Plaintiff attended one or more Springdale Borough Council meetings.[1] Plaintiff testified that at one meeting, Medeiros told him he could not attend the meeting and asked another officer to search him. When the other officer refused to do so, Medeiros "touched" Plaintiff's hip and then, according to Plaintiff, in response to Plaintiff putting his hand down because he assumed he was going to be searched, Medeiros ran behind a door, got down on one knee and placed his hand on his own service weapon. *Id.* at 104:1-105:17, 112:22-113:12. After these events occurred, Plaintiff was allowed to attend that day's Council meeting. *Id.* at 107:1-107:3.

The record reflects that at either the same meeting or a different one, Plaintiff addressed Council; however, the subject matter of Plaintiff's comments is disputed. Plaintiff testified that he was "talking about [Medeiros] making racial slurs against black people," *Id.* at 108:1-108:4,

---

[1] It is unclear from the parties' papers exactly how many Council meetings Plaintiff attended and if the events at issue occurred at the same meeting or two separate meetings. However, such information is irrelevant to the Court's analysis of the issues presented.

2

and that he did not recall attempting to speak to Council about a letter he had received.[2] *Id.* at 111:19-111:24. The meeting's minutes demonstrate that Plaintiff "[w]anted to address [Medeiros] and Council about a letter he received. [Frye, the President of the Council at the time,] stated [']this is possible litigation material['] and cannot be discussed." ECF No. 44-3 at 1, 11. Either way, Frye stopped Plaintiff from speaking further and asked Perriello to escort Plaintiff out of the meeting, and the two men walked out together. ECF No. 44-2 at 107:7-109:1; ECF No. 42 at ¶¶ 35-37. According to Plaintiff's testimony, he and Perriello did not speak during their walk, and Plaintiff then exited the building. ECF No. 44-2 at 108:25-109:5.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). To evaluate a motion for summary judgment, the Court may consider all of the materials in the record, Fed. R. Civ. P. 56(c)(3), including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Furthermore, in deciding a motion for summary judgment, the Court must "view[] the evidence in the light most favorable to the nonmoving party and draw[] all inferences in favor of that

---

[2] The Plaintiff's various presentations reference the existence of some sort of letter supposedly authored by Medeiros that is of some relevance to Plaintiff. Both his pleadings, and the record, are rather uncertain as to the existence and purported content of such letter, and in any event, the Court concludes that sorting those matters out is not of consequence to resolving this Motion.

3

party." *Schock v. Baker*, No. 16-1678, 2016 WL 6276048, at *2 (3d Cir. Oct. 27, 2016) (citing *Kaucher v. County of Bucks*, 455 F.3d 418, 422–23 (3d Cir. 2006)).

### III. <u>DISCUSSION</u>

There are three Counts in this case, and the Court will address each of them in turn.

#### A. Count I: Violation of the Fourteenth Amendment

In his Complaint, Plaintiff alleges that his Fourteenth Amendment right to procedural due process was violated because he was deprived of his property interest in his job as a Springdale Borough police officer without being given a *Loudermill* hearing. ECF No. 1 at 7-8. As the Third Circuit has explained, "[t]o prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." *Burns v. PA Dep't of Correction*, 544 F.3d 279, 285 (3d Cir. 2008) (citing *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)). In this case, both parties agree that Plaintiff had a property interest in his job with Springdale Borough. ECF No. 1 at 7; ECF No. 43 at 5. However, both parties also agree that Plaintiff resigned his employment with Springdale Borough by signing a resignation letter on May 27, 2014. ECF No. 43 at 6; ECF No. 44-2 at 83:24-84:18; ECF No. 44-5 at 2. This letter proves to be Plaintiff's undoing. Specifically, Plaintiff's claim fails because "[u]pon resignation, an employee relinquishes his or her property interest in continued employment and cannot claim a deprivation of due process rights." *Woodend v. Lenape Reg'l High Sch. Dist.*, 535 F. App'x 164, 167 (3d Cir. 2013) (citing *Leheny v. City of Pittsburgh,* 183 F.3d 220, 228 (3d Cir.1999)).

Plaintiff tries to save his claim by contending that his resignation was involuntary since it was given in the face of threats of criminal charges. ECF No. 51 at 2. However, involuntariness

is a high threshold that Plaintiff fails to meet. In the Third Circuit, "[e]mployee resignations and retirements are presumed to be voluntary." *Leheny*, 183 F.3d at 228. In general, "[i]f an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government and cannot contend that he was deprived of his due process rights." *Id.* As the Third Circuit has explained, there are only two circumstances in which a resignation will be deemed involuntary, neither of which is met in this case—"(1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *Id.* There is no allegation here that there was any deception or misrepresentation by Springdale Borough that caused Plaintiff to resign. Additionally, the Court concludes as a matter of law that Plaintiff's resignation was voluntary and not the result of coercion or duress.

Even when the Court considers the evidence in the light most favorable to Plaintiff, it is plain that Plaintiff had time to think about his choice and consult with his union representative before making his decision. His union fully supported his decision in resolution of a grievance Plaintiff filed. Furthermore, Plaintiff was able to choose the date on which he resigned and has not demonstrated that he did not understand the choice between the alternatives he was presented with. Plaintiff testified that he had no concerns about threatened criminal charges because he knew that there could not be any substance to them. ECF No. 44-2 at 87:18-87:20, 88:17-89:10. Accordingly, Plaintiff's resignation was voluntary as a matter of law and therefore that Plaintiff cannot validly claim that his due process rights were violated. *See, e.g., Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) (explaining that "resignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal

charges"); *Mayo v. Bangor Area Sch. Dist.*, No. 11-CV-06026, 2013 WL 3716533, at *10 (E.D. Pa. July 16, 2013) (citing *O'Connell v. County of Northampton,* 79 F.Supp.2d 529, 533 (E.D.Pa.1999) to determine whether a resignation was voluntary using factors including if the plaintiff "understood the nature of the choice she was given," "had a reasonable time to choose," and "was permitted to select the effective date of her resignation" and finding that plaintiff's resignation was not involuntary); *compare Paroczay v. Hodges,* 297 F.2d 439 (D.C.Cir.1961) (holding that plaintiff's resignation was involuntary because he had to choose between resigning on the spot or having charges immediately filed against him).

Furthermore, Plaintiff's claim also fails because he chose to drop the grievance process that was available to him. Although Plaintiff filed a grievance against Springdale Borough on May 19, 2014, he admits that he did not follow through with it once he resigned. ECF No. 44-2 at 87:2-87:17. In the Third Circuit, "[a] state cannot be held to have violated due process when a plaintiff has refused to utilize procedural protections that were available." *Garzella v. Borough of Dunmore*, 280 F. App'x 169, 173 (3d Cir. 2008) (citing *Alvin v. Suzuki,* 227 F.3d 107 (3d Cir.2000)). Thus, Plaintiff's due process claim fails as a matter of law because he failed to "take[] advantage of the processes that were available." *Id.*

Accordingly, Defendants' Motion for Summary Judgment is granted as to Count I of Plaintiff's Complaint.

### B. Count II: Violation of the First Amendment

As referenced above, some of the facts that underlie Plaintiff's First Amendment claim are disputed. What is clear is that Plaintiff attended a Council meeting, spoke at it and was stopped from speaking further by Frye. What is also clear is that Frye asked Perriello to escort Plaintiff out, and the two men left the meeting together. However, the facts in dispute are what

Plaintiff was speaking about, why Frye cut off his speech and asked Perriello escort him out, and whether Plaintiff was already planning on leaving the meeting before Perriello told him that he had to go. Because these facts are genuinely disputed and are material to whether Frye and Perriello are liable for the events that occurred, Defendants' Motion for Summary Judgment as to Count II regarding those Defendants is denied.

The first step in the Court's First Amendment analysis is to determine what type of forum the Council meeting at issue constituted. In this case, it is obvious that the Council meeting was a limited public forum because the "meeting was held for the limited purpose of governing [Springdale Borough] and discussing topics related to that governance." *Galena v. Leone*, 638 F.3d 186, 199 (2011). Additionally, "[i]t is clearly established that when a public official excludes a[n] elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006). The Third Circuit has delineated the requirements of the First Amendment in a limited public forum as follows:

> In a limited public forum, such as the Council meeting, "content-based restraints are permitted, so long as they are designed to confine the forum to the limited and legitimate purposes for which it was created." *Eichenlaub,* 385 F.3d at 280 (internal quotation marks and citation omitted). The government may not "regulat[e] speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector and Visitors of the Univ. of Va.,* 515 U.S. 819, 829, 115 S.Ct. 2510, 2516, 132 L.Ed.2d 700 (1995). The government, however, may restrict the time, place and manner of speech, as long as those restrictions are reasonable and serve the purpose for which the government created the limited public forum. *Pleasant Grove,* 129 S.Ct. at 1132....However, even if a limitation on speech is a reasonable, time, place, and manner restriction, there is a First Amendment violation if the defendant applied the restriction because of the speaker's viewpoint.

*Galena*, 638 F.3d at 199.

As noted, there are several contested facts that bear on the outcome of the case. One such fact is whether or not Frye and Perriello actually excluded Plaintiff from the meeting, or if he was already planning on leaving of his own accord. Plaintiff testified that Frye asked that he be escorted out, ECF No. 44-2 at 108:17-108:19, and when asked to explain what happened, Plaintiff stated, "I got up, I was getting ready to leave, and [Perriello] just told me I had to leave." *Id.* at 108:22-108:24. What remains unclear from Plaintiff's testimony is whether he was "getting ready to leave" because Frye had asked that he be escorted out, or if he was doing so before he knew that he had to leave. This is a close call, but because the Court must consider the evidence in the light most favorable to Plaintiff, the Court must allow the inference from Plaintiff's testimony that Plaintiff was not leaving of his own accord before he was told he had to go, recognizing that a fact-finder could also infer the opposite conclusion.

If, as Defendants allege and the meeting minutes reflect, Plaintiff was speaking about a matter concerning potential litigation and was stopped and told he was to be escorted out for that reason, Frye's and Perriello's actions may be lawful because such a reason could be a legitimate, content-based yet viewpoint neutral restriction on speech "designed to confine the forum to the limited and legitimate purposes for which it was created." *Id.* at 203, 199. However, if Plaintiff, as he asserts, was speaking about racial discrimination by the Chief of Police and was stopped in his tracks and then escorted out because of his views on the subject, Frye and Perriello may be liable for a First Amendment violation, regardless of whether or not such discrimination was the subject matter of potential litigation.

In essence, what is disputed here is Frye's motive for cutting off Plaintiff's speech, why he asked Perriello to escort him out, and whether that caused Plaintiff to leave the meeting. "Motive is a question of fact that must be decided by the jury, which has the opportunity to hear

8

the explanations of both parties in the courtroom and observe their demeanor." *Monteiro*, 436 F.3d at 405. In this case, given the lack of evidence that Plaintiff was disruptive to the meeting or refused to stop speaking when ordered to do so, the seeming immediacy with which Frye asked Perriello to escort Plaintiff out of the meeting "could be viewed by a reasonable jury as evidence that [Frye]'s behavior was [motivated by a desire to stop Plaintiff from speaking out about a sensitive subject—racial discrimination], rather than a desire to maintain a smooth operation of the meeting." *Id.* Thus, Defendants' Motion for Summary Judgment as to Count II as to Frye and Perriello will be denied.

This is not the end of the Court's inquiry, however, because Plaintiff has asserted his First Amendment claim against the other two Defendants, Springdale Borough and Medeiros, as well. Although Medeiros was present at the Council meeting, Plaintiff does not allege that he told Plaintiff to stop speaking or that he escorted Plaintiff out.[3] *See* ECF No. 44-2 at 107:7-109:4. Similarly, Plaintiff does not provide any facts that would subject Springdale Borough to liability under *Monell v. Dept. of Soc. Servs. of New York*. *See Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658 (1978). For example, Plaintiff does not allege that the actions taken by Frye and Perriello were manifestations of a distinct Springdale Borough policy or custom. *See Monell*, 436 U.S. at 694. Accordingly, Defendants' Motion for Summary Judgment as to Count II regarding Defendants Springdale Borough and Medeiros will be granted.

### C. Count III: Violation of the Fourth Amendment

The first thing that the Court notes regarding Plaintiff's Fourth Amendment claim is that Plaintiff admitted in his deposition testimony that he was never searched. ECF No. 44-2 at

---

[3] In Plaintiff's Response in Opposition To: Defendants' Concise Statement of Facts, ECF No. 50, Plaintiff does allege that Defendant Medeiros spoke out during the meeting when Plaintiff was speaking. However, Plaintiff filed his Response as an "affidavit" that failed to meet the requirements delineated in Federal Rule of Civil Procedure 56(c)(4). Accordingly, the Court will disregard it.

104:12-104:15. Therefore, the Court will only focus on Plaintiff's claim as it relates to the Fourth Amendment's protections against unreasonable seizures.

In general, "a person has been [']seized['] within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980).

In this case, there are two events during which Plaintiff claims he was seized by Defendants. First, Plaintiff claims that he was seized when Medeiros touched Plaintiff's hip and then hid behind a door with his own hand on his own service weapon. The Court concludes that no reasonable jury could find that this event amounted to a seizure. In this instance, Plaintiff was clearly "free to leave" if he chose. No officers brandished their weapons or physically restrained Plaintiff. Additionally, although there were two police officers present, their presence was not "threatening" because Medeiros was hiding behind a door and because the other officer had already indicated that he was unwilling to put his hands on Plaintiff to search him. Thus, the Court concludes as a matter of law that Defendant Medeiros' actions did not constitute a seizure of Plaintiff.

Second, Plaintiff claims that he was seized when he was escorted out of the meeting by Defendant Frye. This claim fails too. In *Laverdi v. Jenkins Twp.*, the Third Circuit was presented

with a set of facts similar to the one in this case. *See Laverdi v. Jenkins Twp.*, 49 F. App'x 362, 363 (3d Cir. 2002). The Third Circuit explained:

> Laverdi testified that he was planning on leaving after he was ruled out of order and that he went freely, strongly suggesting that he consented to leave and thus that no seizure occurred. Moreover, although submission to a show of authority can constitute a seizure even absent physical restraint, *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), here Laverdi's compliance with the officer's escort was insufficient to establish actual submission. *United States v. Valentine,* 232 F.3d 350, 359 (3d Cir.2000) (stating that individual's momentary compliance with police officer did not constitute seizure).

*Laverdi*, 49 F. App'x at 364. Applying this reasoning, the Court concludes that Defendant Perriello's escort of Plaintiff, regardless of whether or not he was already planning to leave the meeting, was not a seizure under the Fourth Amendment as a matter of law.

Accordingly, Defendants' Motion for Summary Judgment as to Count III is granted.

## IV. **CONCLUSION**

Defendants' Motion for Summary Judgment as to Counts I and III is granted. Defendants' Motion for Summary Judgment as to Count II as to Defendants Springdale Borough and Medeiros is granted. Defendants' Motion for Summary Judgment regarding Defendants Frye and Perriello is denied.

An appropriate Order will issue.

_____
Mark R. Hornak
United States District Judge

Dated: November 22, 2016

cc: All counsel of record